# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.: 24-cr-443 (BAH) |
| | : | |
| FRANK DAHLQUIST, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' OMNIBUS MOTIONS *IN LIMINE*

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this omnibus brief arguing motions *in limine* in advance of the trial in this case, scheduled for January 27, 2025. "Motions *in limine* are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.C. Cir. 2013) (quoting *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011)). The government offers the authorities and analysis below to promote efficiency and reduce the need to argue objections mid-trial. The parties nonetheless intend to meet and confer on all issues—to include possible stipulations, agreements, etc.—to ensure a streamlined presentation. For each motion herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments if and when the aforementioned issues arise during trial.

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| **I.** | **Factual Background**............................................................................................ | 3 |
| **II.** | **Motions *in Limine* to Limit Unnecessary Discussion of Security-Related Topics**........... | 7 |
| | a. **Exact Locations of USCP Cameras**................................................. | 8 |
| | b. **Secret Service Protocols** ................................................................. | 9 |
| **III.** | **Motions in Limine to Admit the Congressional Record and S. Con. Res 1** ............... | 11 |
| **IV.** | **Motions *in Limine* to Preclude Improper Defense Arguments**.................................. | 11 |
| | a. **Entrapment-by-Estoppel or Public Authority Defenses** ............................................. | 11 |
| | b. **First Amendment** ................................................................................................ | 15 |

I. **Factual Background**

The Court is quite familiar with the general facts concerning the riot at the U.S. Capitol on January 6, 2021. This recitation of facts specific to the defendant in this case summarizes, but does not necessarily include all of, the government's evidence relevant to these motions *in limine*. The Court may also refer to the Statement of Facts filed in support of the Criminal Complaint in this case, ECF No. 1-1, which contains many of the factual allegations set forth below.

On January 6, 2021, the defendant, Frank Dahlquist, entered the U.S. Capitol grounds and made his way to the Capitol's West Plaza. At that time, a police line, made up of officers from both the U.S. Capitol Police ("USCP") and the Metropolitan Police Department ("MPD), stretched across the West Plaza. Nonetheless, Dahlquist made his way toward the front of the mob.

While standing at least one row of rioters back from the police line, Dahlquist lifted his hand above the crowd and sprayed an orange-colored chemical irritant directly into the face of USCP Officer M.W. At the time, Dahlquist was wearing a gray bandana over the lower half of his face as a mask.



After being sprayed by Dahlquist, Officer M.W. turned away from the police line to seek medical attention.



Later, at approximately 2:27 p.m., rioters began to break through the police line on the West Plaza. As the crowd surged forward, Dahlquist physically engaged with an officer standing next to Sergeant M.R. While Dahlquist grabbed at that officer's helmet, he appears to have made physical contact with Sergeant M.R.'s arm. Dahlquist then backed up, lifted his arm, and sprayed a chemical irritant directly at Sergeant M.R., who was just over arms-length away from Dahlquist at the time. Sergeant M.R. later confirmed, in an interview, that he was sprayed with a chemical irritant by the individual identified as Dahlquist and that he had to seek medical attention as a result.



After the rioters forced police on the West Plaza to retreat, Dahlquist continued to advance closer to the Capitol, eventually reaching the Upper West Terrace. From there, he entered the Capitol building through the Senate Wing Door at approximately 3:06 p.m.



Dahlquist remained inside the Capitol building, both near the Senate Wing Door and in the Crypt, for approximately 18 minutes. Then, as USCP officers worked to clear the area, Dahlquist exited the building through the Senate Wing Door at approximately 3:24 p.m. He remained on the Upper West Terrace and continued to engage with law enforcement until at least 4:22 p.m.



For his part in the riot, the defendant is charged in a nine-count Indictment, ECF No. 39, with violating 18 U.S.C. § 231(a)(3) (civil disorder) (Count One); 18 U.S.C. § 111(a)(1) and (b) (assaulting, resisting, or impeding certain officers using a dangerous weapon) (Count Two); 18 U.S.C. § 111(a)(1) and (b) (assaulting, resisting, or impeding certain officers using a dangerous weapon) (Count Three); 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (entering or remaining in a restricted building or grounds with a deadly or dangerous weapon) (Count Four); 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon) (Count Five); 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon) (Count Six); 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in a Capitol building) (Count Seven); 40 U.S.C. § 5104(e)(2)(F) (act of physical violence in the Capitol grounds or buildings) (Count Eight); 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol building) (Count Nine).

Trial is scheduled to begin on January 27, 2025.

## II. Motions *in Limine* to Limit Unnecessary Discussion of Security-Related Topics

Certain topics that could arise at trial—namely, the exact locations of USCP CCTV cameras and the protocols of the U.S. Secret Service ("USSS" or "Secret Service")—have little to no probative value but would compromise significant security interests if needlessly disclosed to the public. The government does not intend to elicit any of the following topics in its case-in-chief and therefore, in addition to being irrelevant, cross-examination on such topics would be beyond the scope of direct and therefore inadmissible. Fed. R. Evid. 611(b). To the extent that defendant seeks to argue that any of the following topics are relevant and within the scope of the government's examination—or to the extent the defendant seeks to introduce such evidence in his case-in-chief—the government requests an order under Fed. R. Evid. 403 foreclosing unnecessary discussion of these topics.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States*, 282 U.S. 687, 694 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615–16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See, e.g., United States v. Balistreri*, 779 F.2d 1191, 1216–17 (7th Cir. 1985) (upholding district court's decision to prohibit the cross-examination of agent about sensitive information about which that agent did not testify on direct examination and

which did not pertain to the charges in the case), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016).

The Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663–64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief).

Preventing the defendant from exploring the topics identified below—either through cross-examination or in his case-in-chief—will not infringe his Confrontation Clause right because the exact positions of cameras, the camera map, and U.S. Secret Service protocols all implicate national security concerns, are of marginal probative value, and any probative value can be addressed without compromising the protective functions of government agencies.

    a. **Exact Locations of USCP Cameras**

The government seeks an order limiting the defense from probing, during cross-examination or in its case-in-chief, the exact locations of USCP surveillance cameras or from using any map showing these cameras' physical locations as an exhibit at trial.

The government produced such information, designated "Highly Sensitive," to the defendant pursuant to the Protective Order, ECF No. 11. The defendant is able make use of such

information to identify evidence and prepare for trial; however, none of that information illuminates any fact of consequence before this Court. This lack of relevance must be balanced against the national security implications at stake here.

The USCP's surveillance system serves an important and ongoing function in protecting Congress and, therefore, national security. Furthermore, the maps that show the physical location of cameras have been designated as "Security Information" under 2 U.S.C. § 1979, which generally requires approval of the Capitol Police Board before they may be released. Here, the video footage itself reveals the *general* location and angle of the camera's positioning. Additional details as to the *precise* location of the cameras are not relevant to the facts of this case. Even assuming the evidence that the government seeks to exclude was marginally relevant—which it is not—such relevance is substantially outweighed by the danger to national security posed by any unnecessary release to the public. Courts in this district—including this Court—have routinely granted similar motions precluding cross-examination or presentation of evidence about the specific location of USCP surveillance cameras. *See, e.g., United States v. Michael Oliveras*, 21-cr-738 (BAH) (Jan. 17, 2023, Minute Order, granting ECF No. 31, Government's Motion *in Limine* Regarding Evidence About the Specific Locations of U.S. Capitol Police Surveillance Cameras).

    b. **Secret Service Protocols**

To prove violations of 18 U.S.C. §§ 1752(a)(1), (2), (4) and (b)(1)(A) (Counts Four, Five, and Six), the government must prove that the Capitol and its grounds were "restricted" because the Vice President and certain members of his family were present at the Capitol on January 6 and being protected by the Secret Service. *See* 18 U.S.C. § 1752(c)(1)(B) (defining restricted buildings and grounds). To meet its burden of proof at trial, the government intends to offer testimony that,

on January 6, 2021, Secret Service agents were at the Capitol to protect then-Vice President Michael Pence and two members of his immediate family. A Secret Service witness is further expected to explain how the riot at the Capitol on January 6 affected the Secret Service's ability to protect Vice President Pence and his family. This proffered testimony will explain the bases for enhanced security controls at the Capitol on January 6, an essential element of Count Four, as well as establish how the riot disrupted official government functions, an essential element of Count Five, and the Secret Service's federally protected functions, an essential element of Count One.

The very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to the agency's ability to protect high-ranking members of the Executive Branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of any Secret Service witness to questioning about the federally protected function performed by the Secret Service as testified to on direct examination—namely, protecting the Vice President and his family.

The government further requests that such order preclude cross-examination that would elicit information that does not directly relate to whether the Secret Service was performing that function at the Capitol on January 6, 2021. Specifically, cross-examination should not be permitted to extend to (1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

These topics have no relevance to any issue at controversy, and even if they did, any relevance would be substantially outweighed by the danger of prejudicing the government's legitimate interest in the safety of senior government officials. *See* Fed. R. Evid. 403. In other

words, improper cross-examination of the Secret Service witness could reveal sensitive information and compromise national security without adding any appreciable benefit to the determination of the defendant's guilt or innocence, or the veracity or bias of witnesses. For these reasons, courts in this district—including this Court—have routinely granted similar motions limiting the cross-examination of Secret Service witnesses in January 6 trials. *See, e.g., United States v. Michael Oliveras*, 21-cr-738 (BAH) (Jan. 17, 2023, Minute Order, granting ECF No. 30, Government's Motion *in Limine* Regarding Cross-Examination of U.S. Secret Service Witness).

**III.     Motions *in Limine* to Admit the Congressional Record and S. Con. Res 1**

The Congressional proceedings on January 6, 2021 were memorialized in the Congressional Record. The Congressional Record is a public record under Federal Rule of Evidence 902(5). *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 503-504 (S.D.N.Y. 2017) (Congressional transcripts). The government may introduce portions of the Congressional Record at trial, including the bodies' "concurrent resolution to provide for the counting on January 6, 2021, of the electoral votes for President and Vice President of the United States," S. Con. Res. 1, 117th Cong. (2021). These records should be admitted as self-authenticating. Rule 902 provides that a record can be "self-authenticating," meaning it "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. One example is an "Official Publication[]," defined as any "book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5). The congressional record qualifies as one such congressionally published record, and so is self-authenticating under Rule 902(5).

**IV.     Motions *in Limine* to Preclude Improper Defense Arguments**

    a.  **Entrapment-by-Estoppel or Public Authority Defenses**

This Court should prohibit the defendant from making arguments or attempting to introduce evidence that former President Trump or any other official gave him permission to enter

11

the U.S. Capitol grounds or engage in any criminal conduct there—an "entrapment-by-estoppel" or "public authority" defense.

As courts in this district have explained, the entrapment-by-estoppel and public authority defenses are closely related and derive from a constitutional prohibition against "convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *United States v. Sheppard*, No. 21-cr-203, 2022 WL 17978837 at *7 (D.D.C. Dec. 28, 2022) (J. Bates) (quoting *Cox v. Louisiana*, 379 U.S. 559, 571 (1965)). However, both defenses are narrow, and a defendant can only use them if he meets rigorous evidentiary requirements. *See United States v. Alvarado*, 808 F.3d 474, 484–85 (11th Cir. 2015) ("[A] defendant will not be allowed to assert the [public authority] defense, or to demand the jury be instructed on it, unless he meets certain evidentiary prerequisites."); *United States v. Baker*, 438 F.3d 749, 755 (7th Cir. 2006) ("The [entrapment-by-estoppel] defense is a narrow one."). To succeed on an entrapment-by-estoppel claim, a defendant must prove:

1. That a government agent actively misled him about the state of the law defining the offense;

2. That the government agent was responsible for interpreting, administering, or enforcing the law defining the offense;

3. That the defendant actually relied on the agent's misleading pronouncement in committing the offense; *and*

4. That the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (J. Howell) (quoting *Cox*, 906 F.3d at 1191). A similar four-part analysis applies for the public authority defense:

> [A]n individual (1) reasonably, on the basis of an objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field.

*Sheppard*, 2022 WL 17978837 at *8 (quoting *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976)). Common between these standards is, among other things, that a government official must offer a statement of the law.

The defendant cannot argue that, in urging his supporters toward the Capitol, former President Trump made any "statement of law." As courts in this district have observed, "President Trump neither stated nor implied that entering the restricted area of the Capitol grounds and the Capitol building . . . was lawful." *Sheppard*, 2022 WL 17978837 at *9. Rather:

> [Trump]'s speech simply suggests that it would be an act of "boldness" to "stop the steal." Thus, allowing [the defendant's] reliance on these words would be an instance of allowing "following orders, without more, [to] transform an illegal act into a legal one"—something the D.C. Circuit has unequivocally declined to do.

*Id.* (quoting *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 930 F.2d 940 (D.C. Cir. 1990)).

Even if former President Trump *had* made a statement about the law, allowing such a statement to immunize the defendant's conduct would raise serious constitutional concerns. As this Court observed when considering another January 6 defendant's attempt to raise an entrapment-by-estoppel defense, "No American President holds the power to sanction lawless actions because that would make a farce of the rule of law." *Chrestman*, 525 F. Supp. 3d at 32. To allow an entrapment-by-estoppel or public authority defense in this case based on President Trump's statements would implicate both the Take Care clause of the constitution and the presidential oath of office, and more fundamentally question the nature of the rule of law in America. *Cf. United States v. Eicher*, No. CR 22-38 (BAH), 2023 WL 3619417, at *3 n.4 (D.D.C. May 23, 2023) (acknowledging the risk in permitting a defense that would "shield from prosecution criminal conduct undertaken at the mere insinuation of a king—or in this case, a president").

13

Although *Chrestman* focused on the statements of then-President Trump, its reasoning applies equally to any argument that law enforcement or other officials gave the defendant permission to enter Capitol grounds and engage in criminal conduct therein. The government acknowledges the possibility that the conduct of law enforcement officers contemporaneously observed by the defendant is relevant to his state of mind on January 6, 2021. However, the defendant should be barred from introducing evidence or arguing in a manner suggesting that any alleged action or inaction on the part of the police made his conduct legal by estoppel. Like the President, a Metropolitan Police Officer or Capitol Police Officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her conduct. *See Chrestman*, 525 F. Supp. 3d at 33. An officer cannot shield an individual from liability for an illegal act by himself engaging in misconduct or neglecting to enforce the law. The defendant should also be prohibited from introducing officers' alleged actions or inaction that he did not observe, since that conduct cannot be relevant to his state of mind on January 6, 2021.

Several courts in this district—including this one—have considered various defendants' arguments that the former president's words, or the actions of law enforcement, immunized their actions on January 6. To the government's knowledge, all of these arguments have failed. *See, e.g.*, *Sheppard*, 2022 WL 17978837 at *9 (prohibiting defendant from seeking discovery or presenting evidence at trial on entrapment-by-estoppel or public authority defenses); *United States v. Thompson*, No. 21-cr-161 (RBW) (D.D.C. Mar. 23, 2022) (concluding that public authority and entrapment-by-estoppel defenses were not appropriate); *United States v. Grider*, No. 21-cr-022 (CKK), 2022 WL 3030974 at *4 (D.D.C. Aug. 1, 2022) (declining to instruct jury on defense of entrapment-by-estoppel); *Chrestman*, 525 F. Supp. 3d at 33 (noting that an entrapment-by-estoppel

defense is "highly unlikely" to succeed and declining to consider it as weighing in favor of granting pre-trial release).

Therefore, the Court should—as it has in other January 6 cases—preclude the defense from making arguments or attempting to introduce evidence in support of any entrapment-by-estoppel or public authority defense.

      b. **First Amendment**

The Court should also preclude the defendant from arguing or eliciting evidence that his conduct on January 6, 2021, was protected by the First Amendment. None of the offenses with which the defendant is charged punish his speech—unlike how crimes such as threat or solicitation might. "No matter [the rioter's] political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment." *United States v. Nordean*, 579 F. Supp. 3d 28, 53 (D.D.C. 2021).

If the government establishes the elements of any of the offenses with which the defendant is charged, the First Amendment provides him with no defense, even if evidence of the defendant's crimes is intertwined with political discussion or rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendant's conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it"). Moreover, on January 6, 2021, the defendant had no First Amendment right to protest inside the Capitol's restricted perimeter or inside the Capitol building itself. At trial, the evidence will show that, on January 6, the Capitol building and grounds were restricted within the meaning of 18 U.S.C. § 1752(c)(1)(B) (defining a "restricted building or grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person

protected by the Secret Service is or will be temporarily visiting"). There is no First Amendment right to protest in an area that is restricted within this meaning. The government can—and on January 6, 2021, *did*—restrict an area that is a traditional public forum for legitimate government ends. Courts in this district have repeatedly affirmed that the government may close a public forum in similar circumstances. *See, e.g., Mahoney v. United States Marshals Service*, 454 F. Supp. 2d 21, 32–33 (D.D.C. 2006) (U.S. Marshals Service did not violate the First Amendment by restricting access to a sidewalk in front of St. Matthew's Cathedral during services attended by judges and Supreme Court justices, even though the sidewalk was a traditional public forum).

Accordingly, any line of cross-examination or argument that the defendant may wish to make regarding the First Amendment is irrelevant under Fed. R. Evid. 401 because it lacks a tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable, and because the defendant is not entitled to a First Amendment defense as a matter of law. In fact, courts in this district have routinely denied similar motions precisely on the ground that "[a]llowing [the defendant] to argue to the jury that her conduct was protected under the First Amendment – *a legal question* – would inappropriately shift the responsibility for making determinations of law from the Court to the jury." *United States v. Baez*, 695 F. Supp. 3d 94, 107 (D.D.C. 2024) (J. Friedman) (emphasis added).

Lastly, even if there is any marginal relevance to any First Amendment claims the defendant may pursue, such questioning or argument should be excluded under Fed. R. Evid. 403 because it risks confusing the issues, wasting time, and being unfairly prejudicial.

Therefore, the Court should—as it has in other January 6 cases—preclude the defense from arguing or attempting to elicit evidence suggesting that his conduct was authorized by the First Amendment. *See, e.g.*, *United States v. John Todd*, No. 22-cr-166 (BAH) (Jan. 9, 2024 Minute

16

Order, granting ECF No. 110, Government's Motion *in Limine* to Preclude the Use of Improper First Amendment Defenses).

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the requested relief or, if the Court reserves ruling, to consider the above arguments if and when the aforementioned issues arise during trial.

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    /s/ *Sean J. Brennan*
        SEAN J. BRENNAN
        Assistant United States Attorney
        NY Bar No. 5954128
        601 D Street NW
        Washington, DC 20530
        Sean.Brennan@usdoj.gov
        202-252-7125

        */s/ Karen Rochlin*
        KAREN ROCHLIN
        Assistant United States Attorney Detailee
        DC Bar No. 394447
        99 N.E. 4th Street
        Miami, FL 33132
        Karen.Rochlin@usdoj.gov
        (786) 972-9045