UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 24-443 (BAH) |
| FRANK DAHLQUIST, | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM AND ORDER**

Defendant Frank Dahlquist faces trial on January 27, 2025, on a nine-count federal indictment, including six felony charges, Indictment, ECF No. 39, stemming from his alleged offense conduct at the U.S. Capitol on January 6, 2021.[1] In advance of trial, defendant filed two Motions to Change Venue, arguing that defendant could not receive a fair trial in Washington, D.C. Def.'s Mot. to Change Venue ("Def.'s 1st Mot."), ECF No. 47; Def.'s Mot. to Change Venue ("Def.'s 2nd Mot."), ECF No. 62.[2] The government opposed the first motion in its entirety. Gov't's Opp'n to Def.'s Mot. to Transfer Venue ("Gov't's Opp'n"), ECF No. 55. For the reasons explained below, both of defendant's motions to transfer venue are denied.

---

[1] Defendant faces charges for Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Counts Two and Three); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Count Four); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Count Five); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) (Count Six); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5014(e)(2)(D) (Count Seven); an Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Eight); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Nine). Indictment, ECF No. 39.

[2] Defendant's first motion was timely filed by defendant's former counsel in accord with the court-ordered schedule, *see* Min. Order Setting Schedule (Nov. 4, 2024). After defendant's current counsel noticed his appearance, *see* ECF No. 57, defendant's second motion was filed, without leave to file an untimely motion, and compounded this utter disregard for compliance with this Court's orders by also failing to respond to the Order to Show Cause, Min. Order (Dec. 26, 2024), seeking an explanation for these potentially duplicative motions. For this reason alone, defendant's second motion may be denied as untimely.

## I.   LEGAL STANDARD

"The Sixth Amendment guarantees criminal defendants an 'impartial jury of the State and district wherein the crime shall have been committed.'" *United States v. Webster*, 102 F.4th 471, 479 (D.C. Cir. 2024) (quoting U.S. CONST. amend. VI).  The text of the Sixth Amendment thus provides for jury trials in the locale where the alleged crime occurred, with transfer of the proceedings to a different venue permitted is "if extraordinary local prejudice will prevent a fair trial—a 'basic requirement of due process.'" *Skilling v. United States*, 561 U.S. 358, 378 (2010) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).  To effectuate this guarantee of an impartial jury, Federal Rule of Criminal Procedure 21 requires that a court "transfer the proceeding against [a] defendant to another district if the court is satisfied that so great a prejudice exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." FED. R. CRIM. P. 21(a); *see also Webster*, 102 F.4th at 479 (citing *Skilling*, 561 U.S. at 378).

## II.   DISCUSSION

Citing "massive negative pre-trial publicity in the District of Columbia and the strong potential for partisan bias," defendant seeks to move his trial from the District to the Middle District of Florida.  Def.'s 2nd Mot. at 1; *see also* Def.'s 1st Mot. at 1 (requesting transfer to allow defendant to be "tried by an impartial jury").  At various points in his second motion, defendant argues that "no juror can be seated who lives in or has any interested [sic] in Washington, D.C.," Def.'s 2nd Mot. at 6, and that the entire jury pool in the District has been biased by its greater consumption of news about the January 6, 2021, riots at the U.S. Capitol than in other parts of the country, *id.* at 24–29.[3]  Defendant additionally asserts that *voir dire* cannot remedy these perceived

---

[3]   As part of this argument, defendant includes three pages of what appears to be copied-and-pasted quotes and abstracts from articles presenting research on implicit bias.  *See* Def.'s 2nd Mot. at 10–12.

issues. *See, e.g.*, *id.* at 22 (arguing that *voir dire* in "all January 6 cases" is insufficient). These arguments, however, fall far short of demonstrating that the entire jury pool in this District, comprised of hundreds of thousands of individuals, *see* Def.'s 2nd Mot. at 6–7 (estimating the jury pool is comprised of at least 446,507 individuals); *Webster* 102 F.4th at 480–81 (noting that the District "consists of more than 600,000 individuals"), is biased against defendant, or that a normal *voir dire* process could not effectively screen out biased individuals from serving on the jury.

Defendant's arguments are largely foreclosed by binding Circuit precedent, which he ignores. Indeed, though spilling much ink attacking caselaw precedents from the 1970s, *see* Def.'s 2nd Mot. at 12–18 (discussing *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976)), he fails even to address *Webster*, 102 F. 4th 471, which is binding circuit precedent decided in 2024 on the exact issues of juror pool bias raised by defendant. While no lawyer can be perfect, this failure cannot easily be attributed to mere oversight or gaps in legal research acumen, as the government's opposition to defendant's first motion to change venue raises *Webster* on the very first page, with repeated citations approximately 25 additional times. *See* Gov't's Opp'n at 1, 5, 6, 13, 14, 15, 18. Defendant's counsel is reminded of and cautioned to uphold his professional responsibilities as an officer of the Court.

> **A.   The Entire D.C. Jury Pool is Not Biased Against Defendant**

"Prejudice across an entire jury pool can be presumed "only [in] the extreme case." *Webster*, 102 F.4th at 479 (alteration in original) (quoting *Skilling*, 561 U.S. at 381). As the Supreme Court has made clear, "juror exposure to . . . news accounts of the crime" alone is insufficient to raise a presumptive due process concern. *Skilling*, 561 U.S. at 380 (omission in original) (quoting *Murphy v. Florida*, 421 U.S. 794, 798–99 (1975), and citing *Patton v. Yount*, 467 U.S. 1025 (1984)). "Prominence does not necessarily produce prejudice, and juror *impartiality* . . . does not require *ignorance*." *Id.* at 381 (emphasis in original) (citing *Irvin v.*

*Dowd*, 366 U.S. 717, 722 (1961); *Reynolds v. United States*, 98 U.S. 145, 155–56 (1878)). Defendant here, just as in *Webster*, fails to clear that "very high bar." 102 F.4th at 479.

First, defendant presents no evidence of "pervasive (or much of any) media coverage" specifically about *this defendant*. *Id.* There is no evidence "that the District's jury pool ha[s] any preconceived notions about [defendant] or his guilt or innocence, or even kn[o]w who he [is]." *Id.* Simply put, there is no evidence presented that *any* potential jurors have been biased against this particular defendant, much less the entire pool of more nearly half a million District residents.

Defendant's motion instead focuses on the events and aftermath of January 6, 2021, overall, arguing that "most of [the prospective jurors] . . . hav[e] already made up their minds" about that date. Def.'s 2nd Mot. at 7. This focus on the general opinions of D.C. residents about the events of January 6, however, "misses the point." *Webster*, 102 F.4th at 480. "We expect jurors to view significant criminal events in their hometown with an unapproving eye, whether it is the January 6th attack on the Capitol, a murder, or an armed robbery spree." *Id.* The fact that residents of a particular jurisdiction disapprove of criminal conduct committed in that jurisdiction, "even the specific conduct at issue in a defendant's case[,] says nothing about a juror's ability to be impartial in deciding whether a particular individual committed a crime or not." *Id.*[4] Instead, "[w]hat the Constitution forbids is for a juror to hold a firmly entrenched view about an *individual*

---

[4] People living in the community directly impacted by a crime would naturally be more aware of that crime and consume more media coverage about the crime than people living elsewhere, as the Supreme Court recognized almost 150 years ago, *see Reynolds*, 98 U.S. at 155–156 ("[E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits."), and much more recently, *see, e.g.*, *Irvin*, 366 U.S. at 722 (recognizing that "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case"); *Skilling*, 561 U.S. at 381 (citing *Reynolds*, 98 U.S. at 155–56; *Irvin*, 366 U.S. at 722). As these cases make clear, *voir dire* is the proper process to determine whether such awareness is disqualifying for a potential juror. *See, e.g.*, *Reynolds*, 98 U.S. at 156–57 (discussing the *voir dire* process and its role in screening potential jurors); *Skilling*, 561 U.S. at 384 (finding that "the extensive screening questionnaire and followup *voir dire* were well suited to" performing "careful identification and inspection of prospective jurors' connections" to the case, even when the "community impact" of the alleged criminal activity in the case was "widespread").

*defendant's* guilt or innocence before the trial starts." *Id.* (emphasis in original). Defendant has presented no evidence that even suggests the jury pool is biased against him.

Defendant's challenge about the partisan makeup of the jury pool in this District does not change this analysis. "[T]he political inclinations of a populace writ large say nothing about an individual's ability to serve impartially in adjudicating the criminal conduct of an individual." *Id.* at 481 (citing *Connors v. United States*, 158 U.S. 408, 414 (1895)). As the D.C. Circuit noted, juries in the District have long been held able to sit impartially for criminal trials in cases explicitly invoking politics. *Id.* (citing *United States v. Haldeman*, 559 F.2d 31, 59–64 (D.C. Cir. 1976)).

Ultimately, defendant's motion presents no evidence to justify departing from the D.C. Circuit's 2024 decision in *Webster*, 102 F.4th 471, to find that the entire jury pool of Washington, D.C., is too biased to serve on the jury for defendant's trial.

**B.     Defendant's Attacks on the *Voir Dire* Procedures are Entirely Speculative**

Defendant's attacks on the *voir dire* process are similarly unconvincing. Without offering any support or other corroboration, defendant claims that the *voir dire* process in "all January 6 cases" in D.C. has been "shallow and unprobing." Def.'s 2nd Mot. at 22. This is just flatly wrong. In fact, the D.C. Circuit found the *voir dire* process employed in *Webster*, which involved a January 6 trial, to be "an exacting search." 102 F.4th at 482 (detailing the extensive *voir dire* process used to identify and screen out potential biases). Before trial, defendant will have the opportunity to avail himself of a similar process in order to "[i]dentify[] and eliminat[e] potential juror partiality and prejudice." *United States v. Bochene*, 579 F. Supp. 3d 177, 181 (D.D.C. 2022). At this time, before the parties and the Court have even agreed on the *voir dire* questions to be asked or the process to be used, defendant's speculative attacks on the process are entirely without merit.

## III.     CONCLUSION AND ORDER

For the reasons above, defendant's motions to change venue, ECF Nos. 47, 62, are without merit and must be denied.  Accordingly, it is hereby—

**ORDERED** that defendant Frank Dahlquist's Motions to Change Venue, ECF Nos. 47, 62, are **DENIED**.

Date:  January 15, 2025

_____
**BERYL A. HOWELL**
United States District Judge
