UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 24-443 (BAH) |
| FRANK DAHLQUIST, | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

For his alleged offense conduct on January 6, 2021, at the U.S. Capitol, defendant Frank Dahlquist faces a nine-count indictment, charging him with violating 18 U.S.C. §§ 231(a)(3) (Count One), 111(a) and (b) (Counts Two and Three), 1752(a)(1) and (b)(1)(A) (Count Four), 1752(a)(2) and (b)(1)(A) (Count Five), 1752(a)(4) (Count Six), and 40 U.S.C. §§ 5014(e)(2)(D) (Count Seven), 5104(e)(2)(F) (Count Eight), and 5104(e)(2)(G) (Count Nine). *See generally* Indictment, ECF No. 39. In three separate motions, he contends that Counts One through Six charge violations of statutes that are void for vagueness and that Counts Two through Six fail to state an offense properly in the Indictment. *See* Def.'s Mot. to Dismiss Counts Two and Three ("Def.'s First MTD"), ECF No. 63; Def.'s Mot. to Dismiss Count One ("Def.'s Second MTD"), ECF No. 64; Def.'s Mot. to Dismiss Counts Four, Five, and Six ("Def.'s Third MTD"), ECF No. 65. The only charges left unchallenged in these pending motions are the three Class B (petty) misdemeanor offenses in Counts Seven, Eight and Nine. The government opposes defendant's motions. *See* Govt's Consolidated Opp'n ("Gov't Opp'n"), ECF No. 70. For the reasons stated below, defendant provides no persuasive reason to dismiss any of the charges against him and, thus, his motions to dismiss are denied.

**I.     BACKGROUND**

1

The United States Capitol ("Capitol") is secured 24 hours a day by United States Capitol Police ("U.S. Capitol Police"), and the restrictions around the Capitol include permanent and temporary security barriers and posts manned by the U.S. Capitol Police. Criminal Compl., Attach., Statement of Facts ("SOF") at 1, ECF No. 1-1. On January 6, 2021, the United States Congress convened at the Capitol to certify the vote count of the Electoral College of the 2020 presidential election, and as such, only authorized individuals were allowed access to the inside of the Capitol, and the exterior plaza was closed to members of the public. *Id*. While the certification proceedings were taking place, the doors and windows of the Capitol were locked or otherwise secured. *Id.*

On January 6, 2021, defendant attended the then-president's rally at the Eclipse. *Id.* at 3. After the rally, defendant headed to the West Plaza of the Capitol grounds, where he was confronted by police officers. *Id.* at 6. While facing the crowd of law enforcement officers, defendant sprayed an orange-colored chemical agent directly into the face of a police officer who, after being sprayed, immediately turned away to seek medical attention. *Id.* at 6-7. Undeterred, minutes later, defendant sprayed another officer with the same chemical agent. *Id.* at 8. After struggling with officers, *id.* at 9, defendant made his way to the Upper West Terrace where he threw a piece of lumber towards a group of law enforcement officers. *Id.* at 10-11.

He then entered the Capitol around 3:06 PM through the Senate Wing Door, using his cell phone to video record his progression through the building. *Id.* at 12. After lingering in the foyer near the Senate Wing Door, defendant proceeded to the Crypt and walked around, eventually leaving the building through the Senate Wing Doors around 3:24 PM. *Id.* at 15-16. He then remained on the Upper West Terrace and "engaged" with law enforcement officers until at least 4:22 PM. *Id.* at 18. He described his actions that day to a friend via a text message sent

on January 6, 2021, writing: "It was a great day!! It got spicy but I love the taste of Freedom." *Id.* at 5.

In addition to an investigation performed by the United States Federal Bureau of Investigation to identify defendant, his actions were captured in photographs and videos taken that day, and his location was confirmed by geolocation data connected to his cell phone. *Id.* at 2-20. On October 2, 2024, a grand jury returned an indictment, charging defendant with six federal felony crimes and three federal misdemeanor crimes, listed *supra.* In his three pending dismissal motions, defendant moves to dismiss six of the nine charges against him, under Federal Rule of Criminal Procedure 12(b). *See generally* Def.'s First MTD; Def.'s Second MTD; Def.'s Third MTD.

## II.     LEGAL STANDARD

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). That includes "a defect in the indictment" requiring dismissal, such as "failure to state an offense" and "lack of specificity," FED. R. CRIM. P. 12(b)(3)(B)(iii), (v), provided "the basis for the motion is . . . reasonably available and the motion can be determined without a trial on the merits," FED. R. CRIM. P. 12(b)(3). In ruling on a pretrial motion to dismiss, the trial court must presume the truth of the facts alleged in the charging instrument, *see United States v. Park*, 938 F.3d 354, 358 (D.C. Cir. 2019), and may accept any "undisputed facts" proffered by the government, *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir. 2005) (explaining that "undisputed facts obviate[] the need for [a] district court to make factual determinations properly reserved for a jury"). Since the authority to dismiss an indictment "'directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." *United States v. Ballestas*,

795 F.3d 138, 148 (D.C. Cir. 2015) (quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)).

## III.  DISCUSSION

While acknowledging that his "request would require appellate review modifying or over-turning past precedent and treatment of the statute," Def.'s First MTD at 2, Def.'s Second MTD at 2, Def.'s Third MTD at 2, defendant maintains that "past applications of [the statutes he is charged with violating] have not confronted the infirmities addressed here," Def.'s Second MTD at 2. *Cf.* Def.'s First MTD at 2 (describing that statutory terms are "completely ignored in January 6 cases"); Def.'s Third MTD at 2-3 ("It appears that the courts in the past have merely assumed the statute to be valid."). Not so. As the government recognizes, *see generally* Gov't Opp'n, every argument defendant proffers here has been rejected, and he fails to cite, let alone distinguish or grapple with the reasoning in, any of those cases. *See generally United States v. Gillespie*, No. 22-cr-60 (BAH), 2022 WL 17262218, at *1-3 (D.D.C. Nov. 29, 2022); *United States v. Mock*, No. 21-cr-444 (JEB), 2023 WL 3844604, at *5 (D.D.C. June 6, 2023); *United States v. Gossjankowski*, No. 21-cr-123 (PLF), 2023 WL 130817, at *3-7, *11-13 (D.D.C. Jan. 9, 2023); *United States v. Williams*, No. 21-cr-0618 (ABJ), 2022 WL 2237301, at *1 (June 22, 2022) (collecting cases); Part III.A.; Part III.B.; Part III.C.[1] Defendant's arguments are, again here, rejected.

---

[1]  The blatant failure of defendant's briefing on the pending motions to address the robust reasoning in cases in this Circuit rejecting his arguments requires a reminder that counsel for defendant would be well served by reviewing Model Rule of Professional Conduct 3.3 and its commentary, which is reproduced below, in relevant part, for ease of reference.

> Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, **but must recognize the existence of pertinent legal authorities.** Furthermore, . . . **an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction** that has not

### A. 18 U.S.C. § 231(a)(3) is not Unconstitutionally Vague.

Count 1 charges defendant with violating 18 U.S.C. § 231(a)(3), which provides, in pertinent part:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with … law enforcement officer lawfully engaged in the lawful
> performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—
> Shall be fined under this title or imprisoned not more than five years, or both.

*Id.* Defendant argues that the statute is unconstitutionally vague because "a person of average intelligence and awareness would not know how to conform themselves to the law, to stay on the legal side of the line and avoid crossing the line of the law to illegal." Def.'s Second MTD at 3.

A statute is unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Put simply, "a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s]' 'no standard of conduct . . . at all." *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971)). Contrary to defendant's position, "Section 231(a)(3) 'provide[s] people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' and does not 'encourage[] arbitrary and discriminatory enforcement,'" and is therefore not unconstitutionally vague. *Gillespie*, 2022 WL 17262218, at *1 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Indeed, the statute, clear as crystal, "prohibits any 'act' done 'to obstruct, impede, or interfere' with law enforcement responding to a 'civil disorder.'"

---

been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

MODEL CODE OF PRO. CONDUCT r. 3.3 cmt. 4 (AM. BAR ASS'N) (emphasis added).

5

*Id.* (quoting 18 U.S.C. § 231(a)(3)).  Like a parrot, defendant merely repeats the same, familiar arguments other defendants charged with offense conduct at the Capitol on January 6, 2021, have made against this constitutionally proscribed reading of 18 U.S.C. § 231(a)(3), and like every court to have heard them, including the undersigned, they are rejected.

First, defendant argues that Section 231(a)(3) is "unconstitutional as void for vagueness on its face" for lack of the requisite *mens rea*, describing the text as unclear as to whether the defendant must intend to do those acts.  Def.'s Second MTD at 3-4; Def.'s Reply Supp. Mots. to Dismiss ("Def's. Reply") at 5, ECF No. 73.  The law is clear, however, that Section 231(a)(3) "criminalizes acts performed '*to* obstruct, impede, or interfere with' a law enforcement officer; in other words, the statue *requires* obstructive intent."  *Williams*, 2022 WL 2237301, at *7 (emphasis in original) (quoting 18 U.S.C. § 231(a)(3)); *Gossjankowski*, 2023 WL 130817, at *13 (collecting cases and holding the same).  Defendant conjectures that "[t]he Government . . . will want to read the statute as referring to committing any act <u>with the effect of, even unintended</u> obstructing, impeding, or interfering with [*sic*]."  Def.'s Second MTD at 4 (emphasis in original); Def.'s Reply at 5 (making the same argument).  The government's proposed jury instruction for Section 231(a)(1), however, states that "the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers," which dispels any improper motive defendant hypothesizes exists.  Joint Pretrial Statement, Gov't Proposed Jury Instructions at 4, ECF No. 60-4.

Second, defendant argues that "obstruct, impede, or interfere" is vague, capturing numerous examples of innocuous interactions between individuals and law enforcement officers.  Def.'s Second MTD at 5-7 (describing examples of people screaming to firemen that they need help as firemen are unpacking their equipment to respond to a fire, a civilian asking a police

6

officer where a safe exit is when an officer is directing the public to leave one area, and a journalist asking a question of an officer directing the public to certain areas). These examples are unpersuasive because they are obviously unobstructive, not impeding, nor interfering. Furthermore, the examples ignore a key statutory requirement, that the statute "turns on whether an individual is in fact obstructing, impeding, or interfering with a law enforcement officer who is performing official duties at a specific time: *during the commission of a civil disorder*." *Williams*, 2022 WL 2237301, at *5 (emphasis added). At bottom, "while the statute does not specifically define the words 'obstruct,' 'impede,' or 'interfere,' the statutory terms are not subject to 'wholly subjective judgments,'" *id.* (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)), and "there are specific fact-based ways to determine whether a defendant's conduct interferes with or impedes others," *United States v. Nordean*, 579 F. Supp. 3d 28, 57 (internal quotation marks omitted).

Third, defendant argues that "it is not clear" whether a defendant must obstruct, impede, or interfere with officers or whether the defendant must participate in the civil disorder. Def.'s Second MTD at 7; Def.'s Reply at 6. Section 231(a)(3), however, "is . . . clear that an individual charged under this provision need not have participated in the civil disorder—rather, the alleged crime must have occurred *during* an ongoing civil disorder." *Gillespie*, 2022 WL 17262218, at *2 (emphasis in original).

Fourth, defendant argues that "what . . . the civil disorder [is]" in his case is unclear and that the phrase "incident to and during" in the statute makes such identification vague. Def.'s Second MTD at 8; Def.'s Reply at 6. Defendant is incorrect on both fronts. "Title 18 defines a 'civil disorder' as 'any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the

7

property or person of any other individual.'" *Gillespie*, 2022 WL 17262218, at *2 (quoting 18 U.S.C. § 232(1)). "The riot on January 6, 2021, squarely fits within that description," *id.*, undermining defendant's attempts to downplay the tragic reality that was January 6, 2021. Furthermore, the words "incident to and during" are not unconstitutionally vague. "While certain parties may disagree whether a given action is 'incident to and during' a civil disorder, 'there is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty.'" *United States v. Bingert*, 605 F. Supp. 3d 111, 129 (D.D.C. 2022) (quoting *United States v. McHugh*, 583 F. Supp. 3d 1, 27 (D.D.C. 2022)). "Here, the terms 'incident to a civil disorder' are not subjective . . . . [, and] [t]hey do not require a potential defendant or a jury to guess at their meaning or import their own sense of morality." *Id.* (internal citations omitted). Indeed, specific facts would allow a jury, or other factfinder, "to determine whether . . . a law enforcement officer is performing his official duties 'incident to and during' a civil disorder," *Nordean*, 579 F. Supp. 3d at 57, further strengthening Section 231(a)(3)'s constitutional firmness.

Fifth, defendant takes issue with the statute's language regarding a civil disorder "which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce." Def.'s Second MTD at 7-9; Def.'s Reply at 6-7 (making similar argument). He questions how a person of reasonable intelligence would know of an "affect" on commerce "in any way" and that there are "numerous definitions of commerce," which makes the statute unconstitutionally vague. Def.'s Second MTD at 7-9. In addition to ignoring the statute's definition of "commerce," *see* 18 U.S.C. § 232(2), *United States v. Grider*, 617 F. Supp. 3d 42, 49 (D.D.C. 2022) (describing the statute's definition of "commerce"),

8

Section 231(a)(3)'s commerce requirement is a "jurisdictional element," *United States v. Mostofsky*, 579 F. Supp. 3d 9, 17 (D.D.C. 2021), *see also United States v. Bray*, No. 23-cv-306 (RC), 2024 WL 3723942, at *4-5 (D.D.C. Aug. 8, 2024) (describing Section 231(a)(3)'s reference to "commerce" as a "jurisdictional element"), that does not require proof of defendant's knowledge, *see United States v. Griffin*, 119 F.4th 1001, 1018 (D.C. Cir. 2024) ("When an element of a criminal offense serves as the basis for Congress's authority to legislate; the offense merely provides federal jurisdiction over what was previously a state law offense; and knowledge of the element is not 'essential to the existence of *any* crime,' the element is treated as 'jurisdictional only' and courts presume that knowledge of that element is not required." (emphasis in original) (citing *United States v. Feola*, 420 U.S. 671 (1975) and quoting *United States v. Hicks*, 15 F.4th 814, 818 (7th Cir. 2021))). As such, any qualms defendant has with "commerce" in Section 231(a)(3) does not support a finding that the statute is unconstitutionally vague.

Lastly, defendant argues for the first time in his reply that Count 1 is not sufficiently pled in the indictment, *see* Def.'s Reply at 3-4. That argument is unsupported by even a cursory review of the indictment. An indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), and meets this sufficiency standard, as here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). Count One tracks the operative language in the statute detailing the elements of the offense, provides the time of the offense, and states the place of the offense. Indictment at 2. It, thus, "fairly informs" defendant of the charge he must defend against. *See Hamling*, 418 U.S. at 17; *United States v. Warnagiris*, 699 F. Supp.

3d. 31, 40-41 (D.D.C. 2023) (upholding challenge to charge of violating Section 231(a)(3) because "the indictment sets forth all the elements of Section 231(a)(3), hewing closely to the language of the statute, and contains date and location of the offense"); *United States v. Sargent*, No. 21-cr-258 (TFH), 2022 WL 1124817, at *2-7 (D.D.C. Apr. 14, 2022) (same).

To summarize, none of the arguments defendants makes demonstrate that Section 231(a)(3) is unconstitutionally vague, and his motion to dismiss the charge is denied.

### B.     Counts Two and Three Properly State Offenses under 18 U.S.C. §§ 111(a), 111(b), and Section 111(b) is not Unconstitutionally Vague.

Defendant argues that Counts Two and Three of the Indictment, charging him with violations of 18 U.S.C. §§ 111(a) and 111(b), are constitutionally insufficient because "all prosecutors and judges . . . have sought to erase 'forcibly' from the statute, changing the meaning of the statute." Def.'s First MTD at 2. Even if Counts Two and Three are sufficiently alleged in the indictment, defendant argues that Section 111(b) is unconstitutionally vague. Neither position holds water, and his motion to dismiss these two felony Counts must be denied.

"The Federal Rules of Criminal Procedure require that an indictment consist of 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Cua*, 657 F. Supp. 3d 106, 122 (D.D.C. 2023) (quoting FED. R. CRIM. P. 7(c)(1)). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117; *see also Williamson*, 903 F.3d at 130 (explaining that the indictment "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense" (quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014))).

10

> Sections 111(a) and (b) provide that:
>
> (a) Whoever—(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service, shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such
> (b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

*Id*. Counts Two and Three charge defendant with the following:

### COUNT TWO

> On or about January 6, 2021, within the District of Columbia, **FRANK DAHLQUIST,** using a deadly and dangerous weapon, that is, chemical spray, did *forcibly* assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, M.W., an officer from the United States Capitol Police, while such officer or employee was engaged in or on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.

### COUNT THREE

> On or about January 6, 2021, within the District of Columbia, **FRANK DAHLQUIST,** using a deadly and dangerous weapon, that is, chemical spray, did *forcibly* assault, resist, oppose, impede, intimidate, interfere with, and inflict bodily injury upon an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee, that is, M.R., an officer from the Metropolitan Police Department, while such officer or employee was engaged in or on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.

Indictment at 3-4 (emphasis added).

As even a cursory review demonstrates, Counts Two and Three clearly track the language of Sections 111(a) and (b), provide the date and location of the offenses, and even identify, by initials, the victim officers. Contrary to defendant's conjecture, *see* Def.'s First MTD at 2-4,

11

these charges, as highlighted in italics above, are not "erasing" the word "forcibly" from the statute, but rather explicitly alleging that defendant acted forcibly, *see* Indictment at 2-3. As such, Counts Two and Three set forth "the elements of the offense charged" and "fairly inform[] [defendant] of the charge[s] against which he must defend," *Hamling*, 418 U.S. at 117, satisfying the constitutional test for a sufficient indictment. *See Cua*, 657 F. Supp. 3d at 122 (holding that the government properly charged violations of Section 111 with charging language that mirrored the statute); *Sargent*, 2022 WL 1124817, at *6-8 (same).

While arguing that Counts Two and Three do not sufficiently allege an offense, defendant argues that the indictment fails to charge him sufficiently because "the force necessary to sustain the felony violent crimes in the U.S. Code must be substantial force," Def.'s First MTD at 3, and "no evidence of a non-forcible spraying of an unknown liquid can constitute a crime that requires a test of 'forcibly,'" *id*. *See also* Def.'s Reply at 11-12 (making the same argument). He relies on *Johnson v. United States*, 559 U.S. 133 (2010), where the Supreme Court interpreted the term "physical force" in the Armed Career Criminal Act to "connote[] force strong enough to constitute 'power,'" Def.'s First MTD at 3 (quoting *Johnson*, 559 U.S. at 142).[2] In addition to effectively conceding that whether he acted "forcibly" is a factual question for the jury and not a proper basis to challenge the sufficiency of an indictment, *see* Def.'s First MTD at 9, defendant's reliance on *Johnson* is wholly misplaced as is his quote from it, which is untethered to any argument as to why it is relevant to this case. In *Johnson*, the Court did not parse the relevant statutory language found in Section 111 and, instead, interpreted the term "physical force," as

---

[2] Defendant cites to *Johnson v. United States*, 559 U.S. 133 (2010) for the quote: "A crime that can be committed through mere recklessness does not have as an element the 'use of physical force' because that phrase 'has a well-understood meaning applying only to intentional acts designed to cause harm.'" (emphasis omitted). This quote does not appear in *Johnson* but instead is from a concurring and dissenting opinion in two entirely different cases. *See Borden v. United States*, 593 U.S. 420, 446 (2021) (Thomas, J. concurring and quoting his dissenting opinion in *Voisine v. United States*, 579 U. S. 686, 713 (2016) (Thomas, J., dissenting)).

used in 18 U.S.C. § 924(e)(2)(B) to define a "violent felony" for purposes of an enhanced punishment, *see generally Johnson*, 559 U.S. 133. Those terms, *i.e.,* "physical force" and "violent felony," do not appear in Sections 111(a) or (b), so *Johnson* provides little to no support for defendant's position. Furthermore, "there is no indication that Congress intended the word 'force' to be understood with reference to anything other than its longstanding legal meaning," in Section 111. Order, *United States v. Camargo*, No. 21-cr-70 (ABJ), at 6, ECF No. 114. Thus, "[w]hen the word 'force' serves its specialized legal function in defining the elements of common law assault or battery, it can be satisfied with 'the slightest offensive touching.'" *Id.* (quoting *Johnson*, 559 U.S. at 139). The use of pepper or chemical spray against an officer, if proven, undoubtedly constitutes common law assault and defendant offers no reason why it would not. *Accord United States v. Ramey*, No. 23-3119, 2024 WL 4824357, at *1-2 (D.C. Cir. Nov. 19, 2024) (per curiam) (concluding that a defendant who attempted to spray "a substance" at an officer can be found guilty of violation Section 111 for "assault[ing]" the officer). Accordingly, defendant's motion to dismiss Counts Two and Three for being insufficiently charged is denied.

Defendant finally argues that Section 111(b) is unconstitutionally vague because, in his view, an individual cannot tell if a weapon is deadly or dangerous before committing an offense. Def.'s First MTD at 4-5; Def.'s Reply at 12-13. His contention is unadorned with any legal authority and is rejected. As the D.C. Circuit has observed, some weapons, like guns, are inherently dangerous or deadly. *See United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002). For a weapon that is not inherently dangerous, however, "the object must be capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner," *Arrington*, 309 F.3d at 45 (emphasis in original), to sustain a conviction under Section

13

111(b). Defendant simply ignores *Arrington* and fails to address other case law from this Circuit that describes the use of pepper or chemical spray as a dangerous weapon under Section 111(b), *see, e.g., United States v. McHugh*, No. 21-cv-453 (JDB), 2023 WL 2384444, at *5 (D.D.C. Mar. 6, 2023), Def.'s First MTD (failing to discuss relevant authority), Def.'s Reply (same). Ultimately, "as applied to the particular facts at issue," *Holder v. Humanitarian L. Proj.*, 561 U.S. 1, 18 (2010), defendant fails to provide any reason that he did not have fair notice that deploying chemical spray at uniformed officers trying to disperse a mob, if proven, was unlawful under Section 111(b). *See, e.g.*, *Ramey*, 2024 WL 4824357, at *2 (upholding conviction for pepper spraying an officer during the January 6, 2021, riots as violating 18 U.S.C. § 111(b)). Defendant's motion to dismiss Count Three for being unconstitutionally vague must be denied.

### C. Counts Four, Five, and Six Properly State an Offense and are not Unconstitutionally Vague.

Defendant argues that Counts Four, Five and Six of the indictment fail to state an offense and that the statutory provisions he is charged with violating in those Counts are unconstitutionally vague. *See* Def.'s Third MTD. Count Four charges defendant with entering and remaining in a restricted building or grounds without authorization, in violation of 18 U.S.C. § 1752(a)(1). Indictment at 3. Count Five charges that, in summary, defendant, with intent to obstruct the orderly conduct of government business or official functions, engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). *Id.* at 3-4. Count Six charges defendant with knowingly engaging in any act of physical violence against any person or property in any restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4). *Id.* at 4. Defendant takes aim at these Counts as failing to state an offense because Section 1752(c) defines "restricted building or grounds" as

> (1) any posted, cordoned off, or otherwise restricted area—…
> (B) of a building or grounds where the President or other person protected by the

Secret Service is or will be temporarily visiting[.]

18 U.S.C. § 1752(c)(1)(B), and, in his view, this means that the charges for violating Section 1752 "must be interpreted so as to require that only the U.S. Secret Service can declare a restricted building or restricted grounds within the meaning of 18 U.S.C. § 1752[] [and] that only a restriction specific to 18 U.S.C. § 1752 can support a conviction." Def.'s Third MTD at 2. Defendant argues because the United States Secret Service ("USSS") did not declare the building restricted, the indictment fails to state an offense. *Id.* at 2-8; Def.'s Reply at 7-9.

The D.C. Circuit's opinion in *United States v. Neely*, No. 23-3166, 2024 WL 5229878 (D.C. Cir. Dec. 27, 2024), forecloses defendant's arguments. In *Neely*, the defendant-appellant argued, like defendant here, that the provisions of Section 1752(a)(1) were limited to buildings and grounds restricted by the USSS. 2024 WL 5229878, at *2. The Court, however, held that the plain text "trump[ed]" the argument because "the statutory text is silent as to who may restrict the relevant areas under Section 1752(a)." *Id.* Contrary to defendant's argument that this reading leads to absurd results, providing various hypotheticals, *see* Def.'s Third MTD at 3-4; Def.'s Reply at 7-10, "the *mens rea* requirement would ensure that any individual convicted of such an offense would have knowingly entered into a restricted zone," *Neely*, 2024 WL 5229878, at *3, and "the statute does not sanction otherwise unauthorized individuals to exercise such power," *id.* In essence, Counts Four, Five, and Six of the indictment properly state an offense and his motion to dismiss them as improper is denied.

The same fate holds true with respect to defendant's arguments that the statutory provisions he is charged with violating are unconstitutionally vague. Defendant first argues that, in his view, "[i]f the [USSS] or prosecutors can say that the area is '*otherwise restricted*' the definition [of 'restricted buildings or grounds'] has no meaning at all." Def.'s Third MTD at 9 (emphasis in original) (quoting 18 U.S.C. § 1752(a)); Def.'s Reply at 8-11 (making the same

15

argument). The D.C. Circuit, however, has held that "[t]he 'restricted' signs on the Capitol grounds, coupled with the presence of federal law enforcement officers enforcing the boundaries, clearly sufficed to 'give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *Neely*, 2024 WL 2024 WL 5229878, at *4 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Thus, "the statute is not ambiguous." *Id.* at *5.

Defendant further argues that the statute is unconstitutionally vague by permitting a law enforcement officer to "legislate on the spot" and act arbitrarily in designating a building or ground as restricted "with no standards." Def.'s Third MTD at 9; Def.'s Reply at 8-11. "[T]he statute," however, "does not invite arbitrary enforcement by criminalizing common activities or giving law enforcement undue discretion." *United States v. Griffin*, 549 F. Supp. 3d 49, 56 (D.D.C. 2021). "[A]s applied here," *see id.*, the government alleges defendant breached the clearly posted security barriers that were manned by uniformed federal officers, *see* SOF at 1-2, 12-20. At bottom, Section 1742 "is no trap awaiting the unwary," *id.*, and is not unconstitutionally vague, warranting denial of defendant's motion to dismiss Counts Four, Five, and Six.

\*\*\*

Not to put too fine a point on it, "[r]unning throughout [defendant's] briefing is a fundamental . . . misunderstanding of the vagueness doctrine," *McHugh*, 583 F. Supp. 3d at 27, and the standard for an indictment to state an offense. With respect to the vagueness doctrine, "[c]lose cases can be imagined under virtually any statute . . . . What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."

*Williams*, 553 U.S. at 306.  Indeed, "[t]hat each and every possible application of statutory language is not immediately apparent to a layman does not make a statute void for vagueness, and 'a statutory term is not rendered unconstitutionally vague because it 'does not mean the same thing to all people, all the time, everywhere.'"  *McHugh*, 583 F. Supp. 3d at 18 (quoting *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)).  The law is clear that "vagueness must be considered 'as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"  *Gillespie*, 2022 WL 17262218, at *2 (quoting *Holder*, 561 U.S. at 18-19).  As the government alleges, on January 6, 2021, defendant interfered with and obstructed law enforcement officers guarding the Capitol from thousands of rioters, *i.e.*, a civil disorder, by spraying multiple officers with a chemical irritant, lodging a piece of lumber at a group of officers protecting the Capitol, entering the Capitol which was, as alleged, clearly restricted.  *See generally* SOF.  If proven, his conduct would plainly violate the statutes for which he is charged with violating, and "thus puts this defendant, and others similarly situated, on notice of prohibited conduct."  *Gillespie*, 2022 WL 17262218, at *2.

With respect to the sufficiency of an indictment, defendant confusingly argues that "there are two lines of absolutely contradictory precedents on the question of whether indictments must contain specific facts as to how a defendant is alleged to have violated a statute."  Def.'s Reply at 2.  This argument evidences a fundamental misunderstanding of the law.  The Supreme Court has "identified two constitutional requirements for an indictment."  *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).  First, it must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend."  *Id.* (quoting *Hamling*, 418 U.S. at 117).  Second, it must "enable[] him to plead an acquittal or conviction in

bar of future prosecutions for the same offense." *Id.* (quoting *Hamling*, 418 U.S. at 117). An indictment that provides "the operative statutory text, while also specifying the time and place of the offense" satisfies this constitutional standard. *Williamson*, 903 F.3d at 131. Of course, "there are crimes that must be charged with greater specificity," *Resendiz-Ponce*, 549 U.S. at 109, such as when a statute "depen[ds] so crucially upon a specific identification of fact." *Id.* (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)). Defendant does not provide any argument as to how the charges against him depend on crucial facts that are required but not present in the indictment, and he makes no effort to syllogize his indictment with any indictment any court has found to be insufficient. The Counts in the indictment closely track the required elements needed to state an offense under each statute, specify the time and place of the offense, and also provide details regarding the identity of the officers he is charged with assaulting and the dangerous weapons he is charged with using. *See* Indictment.

In sum, Counts Two through Six are sufficiently charged, and none of the statutes defendant is charged with violating for his alleged riotous conduct on January 6, 2021 are unconstitutionally vague.[3]

---

[3] In each motion, defendant mentions that each statute he challenges in his motions is also constitutionally invalid for overbreadth, Def.'s First MTD at 4, Second MTD at 3, Def.'s Third MTD at 9, and, as support, provides a block quote reciting the "overbreadth doctrine" in his legal standard section, Def.'s First MTD at 8-9, Def.'s Second MTD at 13, and Def.'s Third MTD at 13. He, however, seems to conflate the overbreadth and vagueness doctrines, when these doctrines "are 'distinct': '[a] vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions; in contrast, a law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity.'" *United States v. Williams*, No. 21-cv-0618, 2022 WL 2237301, at *6 (D.D.C. June 22, 2022) (quoting *Hastings v. Judicial Conf. of the U.S.*, 829 F.2d 91, 105 (D.C. Cir. 1987)). Other than mentioning the overbreadth doctrine, defendant does not provide any arguments, citations, or mention of how, in his view, the statutes are overbroad in violation of the First Amendment. *See generally* Def.'s First MTD; Def.'s Second MTD; Def.'s Third MTD. In fact, he only mentions the First Amendment in his second motion to dismiss and then only one time passingly, *see* Def.'s Second MTD at 3. Given this threadbare reference, without development or serious consideration, to the overbreadth doctrine, defendant's motions are construed as asserting challenges under the vagueness doctrine. Even if overbreadth arguments were properly presented, which they are not in defendant's pending motions, persuasive reasoning on this Court has concluded that Sections 223 and 1742 are not overboard and do not infringe on any purported First Amendment rights, and defendant has not provided any reason to conclude otherwise. *See United States v. Gillespie*, No. 22-cr-60 (BAH), 2022 WL 17262218, at *3 (D.D.C. Nov. 29, 2022) (collecting cases and holding that "Section 231(a)(3) criminalizes 'any *act* to obstruct, impede, or interfere with' law enforcement—not

## IV.    CONCLUSION

For the foregoing reasons, defendant's motions to dismiss Count One, ECF No. 64, Counts Two and Three, ECF No. 63, and Counts Four, Five, and Six, ECF No. 65, are **DENIED**.

Date: January 15, 2025

                                                                          **BERYL A. HOWELL**
                                                                          United States District Judge

---

speech" (emphasis in original)); *United States v. Gossjankowski*, No. 21-cv-0123 (PLF), 2023 WL 130817, at *7 (D.D.C. Jan. 9, 2023) (holding that 18 U.S.C. § 1752 is not overbroad). With respect to Section 111, which makes unlawful forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer engaged in the performance of his duties, 18 U.S.C. § 111(a), and enhances the penalty when such act is committed with a "dangerous weapon," 18 U.S.C. § 111(b), this unlawful conduct unequivocally "is not related to the suppression of free expression," *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016), and as such, is not overbroad in violation of the First Amendment. *See also Virginia v. Hicks*, 539 U.S. 113, 124 (2003) ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech.").