UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 24-443 (BAH) |
| FRANK DAHLQUIST, | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM AND ORDER**

Defendant Frank Dahlquist is facing trial on January 27, 2025, on nine felony and misdemeanor counts in an indictment, charging him with violations of 18 U.S.C. § 231(a)(3) (Count One); 18 U.S.C. §§ 111(a) and (b) (Counts Two and Three); 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Counts Four and Five), 18 U.S.C. § 1752(a)(4) (Count Six); 40 U.S.C. § 5014(e)(2)(D) (Count Seven); 40 U.S.C. § 5104(e)(2)(F) (Count Eight), and 40 U.S.C. § 5104(e)(2)(G) (Count Nine), for his alleged actions at the U.S. Capitol on January 6, 2021. *See* Indictment, ECF No. 39. In advance of trial, defendant filed an untimely 15-part motion in limine, seeking to exclude various forms of evidence and certain arguments. Def.'s Mot. in Limine & Mem. in Supp. ("Def.'s Mem."), ECF No. 66; *see also* Def.'s Reply Supp. Mot. in Limine ("Def.'s Reply"), ECF No. 72. The government opposes this motion in its entirety. Gov't Opp'n Def.'s Mot. in Limine ("Gov't Opp'n"), ECF No. 68. Defendants' arguments are difficult to comprehend, legally infirm, and in some cases, fatally unspecific. For the reasons explained below, all the separate requests made in defendant's motion are denied.

**I.     LEGAL STANDARD**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED.

1

R. EVID. 401(a)-(b). "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), and irrelevant evidence is not, FED. R. EVID. 402. Even if it is relevant, however, the evidence may be excluded "if its probative value is substantially outweighed by a danger or one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Rule 403 does not bar all potentially prejudicial evidence. Rather, the term "unfair prejudice" refers to an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting FED. R. EVID. 403, Advisory Committee Note); *see also United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or isn't material. The prejudice must be 'unfair.'" (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977))). "Rule 403 'tilts . . . toward the admission of evidence in close cases.'" *Ring*, 706 F.3d at 474 (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)).

**II.     DISCUSSION**

The evidence and arguments that defendant requests to exclude are neither irrelevant nor unfairly prejudicial. They therefore do not warrant exclusion under the Federal Rules.

**A.     Exclusion of "Photograph from Getty and Unknown Liquid"**

Defendant seeks to exclude "PHOTOGRAPH FROM GETTY," Def.'s Mem. at 4 (capitalization in original), without any other identifying information about what item is being targeted for exclusion. The government construes defendant as seeking to exclude GX504 and GX505, which are printed in its opposition, Gov't Opp'n at 5, and defendant appears to agree that these are the government exhibits that he seeks to exclude in this portion of his motion,

2

Def.'s Reply at 1-2.[1] Defendant contends that these photographs, which show him spraying something toward officers, is not probative and highly prejudicial because (1) no proof beyond a reasonable doubt establishes what the liquid was, and "for all we know the allegedly sprayed liquid was a Mentos candy mint placed into a Pepsi-cola bottle," Def.'s Mot. at 4, and (2) this could not have been done "forcibly" and therefore cannot be probative of defendant committing felonious assault, *id*. at 4-5.

These photographs are not substantially more prejudicial than probative. They are plainly relevant to multiple of the charges, including Count One (interfering with a law enforcement officer during civil disorder, 18 U.S.C. § 231), Counts Two and Three (using a dangerous weapon to forcibly resist or interfere with officers, 18 U.S.C. § 111), Count Five (disruptive and disorderly conduct, 18 U.S.C. § 1752(a)(2) and (b)(1)(A)), Count Six (act of violence in a restricted area, 18 U.S.C. § 1752(a)(4)), Count Seven (disorderly conduct within the Capitol grounds, 18 U.S.C. § 5104(e)(2)(D)), and Count Eight (act of physical violence within the Capitol grounds, 18 U.S.C. § 5104(e)(2)(F)). In addition, aside from the act of spraying the liquid, which, if proven, could result in defendant's convictions on those charges, the photographs have a tendency to make certain underlying facts more or less probable, such as defendant's presence on Capitol grounds.[2]

Defendant's argument that the government cannot prove without a reasonable doubt the exact chemical formulation of the liquid sprayed is of no matter. *See* Def.'s Mem. at 4; Def.'s

---

[1] Defendant emphasizes that these photos are not the originals because they show the logo "Getty images," Def.'s Reply at 1, but makes no discernable argument against their admission for lack of authenticity.

[2] In his reply only, defendant denies that he is the individual depicted in the photograph spraying the liquid and further argues this exhibit should be excluded to avoid confusing the jury because no image of the actual hand doing the spraying can be seen in the photograph. Def.'s Reply at 2. That argument goes to the probative value of the image, not its admissibility. No unfair prejudice will result from an image that is incomplete and will require the jurors' interpretation.

Reply at 2. No single piece of evidence is required to establish all the facts necessary to a conviction in order to be admitted, and moreover, the specific identification of the contents of the liquid would be helpful, but not necessarily crucial, to its qualification as a "dangerous weapon." In any event, the government intends to put on witnesses who were affected by the spray, which would establish its properties as a dangerous substance, as relevant to defendant's charges. *See* Gov't Opp'n at 7.

Similarly, defendant's argument that spraying a liquid with intent to harm someone cannot be considered "the use of physical force" or satisfy the "forcibly" requirement in 18 U.S.C. § 111, lacks legal support and, in any case, is inapposite to the admission of the photographs. Defendant suggests that "forcibly" requires at least a "willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person, . . . which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm" and thus encompasses only "intentional acts designed to cause harm." Def.'s Mem. at 5 (emphasis omitted) (first quoting *United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999)). Defendant then tautologically insists that "non-forcible spraying of an unknown liquid cannot count." *Id.* Certainly, however, someone *could* spray a dangerous liquid with clear intent and ability to inflict injury. So, by defendant's own definition, the spraying of a liquid could satisfy "forcibly" under 18 U.S.C. § 111, and the image cannot be excluded on that basis. *See also* Gov't Opp'n at 8 (contending that *Chestaro* does not interpret "forcibly" in the context of felonious assault but offering a similar definition from *United States v. Taylor*, 84 F.3d 476, 493 (1st Cir. 2017), as "a showing of either physical contact . . . or such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death"). Regardless, even if spraying a dangerous liquid with intent to harm someone could not satisfy the

requirements of 18 U.S.C. § 111, the image would not be "irrelevant and prejudicial" and therefore inadmissible, Def.'s Mem. at 5, as the image would remain probative of several of the other remaining charges, such as "disorderly conduct" under Count Five, 18 U.S.C. § 1752(a)(2).

Consequently, defendant's request to exclude GX504 and GX505 is denied.

B.    **Exclusion of Identification-Related Evidence**

Defendant seeks to exclude testimony identifying the defendant by the government affiant, who identified Dahlquist based on the images and videos in the government's statement of facts supporting the criminal complaint, Criminal Compl., Statement of Facts, ECF No. 1-1. Def.'s Mem. at 5. Defendant argues that this affiant, a Federal Bureau of Investigation Special Agent, "has no personal knowledge of" defendant. *Id.* at 5. Defendant cites no legal rule supporting exclusion, though he argues that the photos and identification "risk . . . being more prejudicial than probative," and the Agent would not be a "competent" witness. Def.'s Mem. at 5-6; Def.'s Reply at 3-5. Though difficult to discern, this argument is construed to seek exclusion of potential testimony by the Agent about the defendant's identification, despite the Agent's lack of personal knowledge, as improper lay opinion testimony under Rule 701, which prohibits a lay witness from testifying about something outside of his personal knowledge. *See, e.g.*, *United States v. Jett*, 908 F.3d 252, 271 (7th Cir. 2018) ("Under Rule 701, a witness can match a defendant to surveillance footage only if there is a basis for concluding that the witness 'is more likely to correctly identify the defendant from the photograph than is the jury.'" (quoting *United States v. White*, 639 F.3d 331, 336 (7th Cir. 2011))). Rule 701 does not bar the Agent, however, from testifying about facts that may help the jury inferentially establish the defendant's identity.

To the extent defendant argues that the government lacks sufficient evidence, as a matter of law, for the jury to identify defendant, that argument is not persuasive. The jury may do so

based on all of the facts and circumstances, including testimony from an Agent, *see, e.g.*, *United States v. Ayala*, 289 F.3d 16, 25 (1st Cir. 2002) ("Identification can be inferred from all the facts and circumstances that are in evidence." (quoting *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995))), *United States v. Cooper*, 733 F.2d 91, 92 (11th Cir. 1984) ("Identification of a defendant can be established by inference and circumstantial evidence."), and from a witness with personal knowledge, as the government indicates it plans to offer, Gov't Opp'n at 9. The enumerated, 27 "problems" that defendant lists as undermining the government's identification, Def.'s Mem. at 6-8, are all arguments he can make at trial or elicit via cross-examination; they do not bear on admissibility of identification-related evidence.

Relatedly, defendant moves to exclude any photograph or recording "purporting to show or identify" defendant because the black hoodie, which the government identified defendant as wearing in the photos and videos, is not unique enough to identify the man as defendant and is therefore more prejudicial than probative. Def.'s Mem. at 8-9. This argument has no merit; the commonness of the hoodie does not bear on admissibility of any photograph purporting to depict defendant. The hoodie is not the only characteristic in these photos to be used to identify the defendant, and the fact finder has the task of determining whether the government has produced sufficient evidence to identify the man in those images as defendant.

### C. Exclusion of Information about Events at the U.S. Capitol on January 6, 2021

Defendant next seeks to exclude facts about the events that occurred at the U.S. Capitol on January 6, 2025, including "the quantity of people" present, "recess of the Joint Session of Congress," and "resumption of the Joint Session of Congress." Def.'s Mem. 9-12 (capitalization omitted). None of the arguments asserted to support such exclusion is persuasive.

6

Defendant first seeks to exclude any evidence about "the quantity of people" at the Capitol on January 6, 2021, because this building is often filled with "hundreds if not a thousand or so visitors and tourists from around the world" at one time on any given day. Def.'s Mem. at 9. "Where the quantity of people in a 750-foot-long building is not established as being different from a normal day on Capitol Hill, it should not be allowed as evidence." *Id.*; *see also* Def.'s Reply at 5-6. To the extent defendant seeks only to exclude concrete evidence about the "quantity of people" present at the Capitol on January 6, 2021, the government has represented that the government does not intend to offer such evidence, Gov't Opp'n at 11-12, so defendant's motion is denied as moot.

To the extent defendant seeks also to exclude evidence about crowded conditions at the Capitol, that motion is denied because such evidence is clearly probative and not unduly prejudicial. Defendant's participation in a crowd at the Capitol and the actions of that crowd are relevant to the intent behind his alleged actions, such as whether he knew he was entering into and committing violence within a restricted building or grounds. *See* 18 U.S.C. § 1752(a)(1) (Count Four) (prohibiting "*knowingly* enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so" (emphasis added)); 18 U.S.C. § 1752(a)(4) (Count Six) (prohibiting "*knowingly* engag[ing] in any act of physical violence against any person or property in any restricted building or grounds" (emphasis added)). The existence and actions of a surrounding crowd are also relevant to the nature of defendant's conduct—*i.e.*, whether the conduct was "incident to and during the commission of a civil disorder," "disorderly," "disruptive," or "demonstrating"—and some of the factual predicates required for conviction, such as whether the victims of the alleged assaults were "person[s] designated in section 1114 of this title . . . engaged in or on account of the performance of official duties" during the alleged

assaults. *See* 18 U.S.C. § 231(a)(3) (Count One) (prohibiting "obstructing . . . an officer . . . incident to and during the commission of a civil disorder"); 18 U.S.C. § 111(a)(3) (Counts Two and Three) (prohibiting assault of officers "while engaged in or on account of the performance of official duties"); 18 U.S.C. § 1752(a)(2) (Count Five) (prohibiting "engag[ing] in disorderly or disruptive conduct"); 40 U.S.C. § 5104(e)(2)(D) (Count Seven) (prohibiting "engag[ing] in disorderly or disruptive conduct"); 40 U.S.C. § 5104(e)(2)(G) (Count Nine) (prohibiting "parad[ing], demonstrat[ing], or picket[ing] in any of the Capitol Buildings"); *see also United States v. Nassif*, 97 F.4th 968, 980 (D.C. Cir. 2024) ("Read in context, the prohibition on 'demonstrat[ing]' reaches *people gathering* or individually drawing attention to themselves inside the Capitol buildings to express support for or disapproval of an identified action or viewpoint." (emphasis added)). A "rational jury could conclude that [defendant's] actions were disorderly because, *viewed in the context of the day's events*, they 'tend[ed] to disturb the public peace, offend public morals, or undermine safety.'" *United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) (emphasis added) (quoting BLACK'S LAW DICTIONARY 292 (7th ed. 1999)); *see also id.* (noting that defendant "entering the Capitol as part of a crowd rather than as a lone individual magnified the disruptiveness of his presence"); *United States v. Baez*, No. 21-cr-507 (PLF), 2024 WL 4880011, at *2 (D.D.C. Nov. 25, 2024) ("[A] defendant's conduct on January 6 'did not occur in a vacuum, and thus the actions of others may be relevant, and indeed necessary, to the government's case against' them." (quoting *United States v. Gunby*, No. 21-cr-626 (PLF), 2023 WL 4993483, at *5 (D.D.C. Aug. 4, 2023))).

Defendant's participation in a crowd is particularly crucial to the aiding and abetting charge under Count One, *see* Joint Pretrial Statement, Gov't's Proposed Jury Instructions at 9, ECF No. 60-4, *United States v. Ginyard*, 511 F.3d 203, 211 n.6 (D.C. Cir. 2008) ("[A]iding and

abetting . . . 'is considered embodied in full in *every* federal indictment.'" (emphasis in original) (quoting *United States v. Lam Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991))). Evidence that defendant aided and abetted the commission of an offense cannot be proven without evidence of engagement with other actors. *See Rosemond v. United States*, 572 U.S. 65, 67 (2014) ("To aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'" (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)). Some evidence about others at the Capitol is thus crucial to the government's case.

In short, the actions of those around defendant are probative of guilt or innocence on all the charged counts.

Defendant then seeks to exclude any information on the recess and the resumption of the "joint session of Congress," because he seemingly admits to being at the Capitol, but "arriv[ing] . . . around 3:06 PM," which was over an hour after the Joint Session of Congress recessed. Def.'s Mem. at 10-11. Due to this timing, he argues that "it is more prejudicial than probative to address any matters relating to the disruption or recess of the Joint Session of Congress on January 6, 2021." *Id.* at 10. He further contends that "[n]o mention or evidence or argument should be permitted of any delay of the resumption of the Joint Session of Congress on January 6, 2021" because "[u]nless the Government can prove by how many seconds, minutes, or hours, Dahlquist's existence on Capitol Hill delayed the resumption, any mention of this topic is unfairly prejudicial and not probative." *Id.* at 10-11.

The risk of unfair prejudice is not substantially outweighed by the probative value of such evidence. The context of what occurred in Congress on January 6, 2021, including the disruption of Congressional proceedings, is crucial to several of defendant's charges. For instance, Count

One requires a showing that the interference with law enforcement incident to a civil disorder resulted in the disruption of a federally protected function, *see* 18 U.S.C. § 231(a)(3); Count Five requires a showing that defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted official functions, *see* 18 U.S.C. § 1752(a)(2); and Count Seven requires a showing that defendant's conduct was with the intent to disturb the conduct of a session of Congress, *see* 40 U.S.C. § 5104(e)(2)(D). "A rational jury could conclude that [defendant's] actions were disruptive because his presence in the Capitol contributed to the Congress's multi-hour delay in completing the electoral certification." *Alford*, 89 F.4th at 952; *see also Baez*, 2024 WL 4880011, at *3 (considering a similar argument by defendant and deciding that "[defendant's] presence in the Capitol may have served to delay the resumption of the Joint Session"). Defendant's arguments that his actions cannot be so directly tied to the disruption and resumption of Congressional proceedings speaks to the probative value of such evidence, not their admissibility.

      **D.**    **Exclusion of the Word "Certification" to Describe the Congressional Proceedings on January 6, 2021**

Defendant contends that "there is no certification by Congress that takes place on any given January 6" and that the President of the Senate merely "counts the Electoral College votes," making the use of the word "certification" "false, deceitful, and misleading." Def.'s Mem. at 11; Def.'s Reply at 10 ("[T]he Government attempts to dress up an act of mathematics as something more serious in order to attempt an unjustified smear of defendants like Dahlquist."). The term "certification" has been used, however, at every level of the federal court system to describe the proceedings prescribed by 3 U.S.C. § 15 on January 6. *See, e.g.*, *Trump v. United States*, 603 U.S. 593, 621 (2024); *Alford*, 89 F.4th at 943, 946, 947; *United States v. Brock*, 94 F.4th 39, 42 (D.C. Cir. 2024); *United States v. Seefried*, 639 F. Supp. 3d 8, 9 (D.D.C.

2022). Defendant provides no persuasive reason why this Court should depart from the well-established use of the term in this context and no reason whatsoever why that term would be "unduly prejudicial." None of defendant's charges turn on whether defendant interfered specifically with a "certification" versus another type of official proceeding, and thus this part of defendant's motion borders on the frivolous.

### E.   Exclusion of "False and Inflammatory Statements about Deaths that Did Not Occur"

Defendant seeks to exclude any comment that suggests that the deaths of certain officers—Officers Sicknick, Liebengood, Smith, Hashida, and deFreytag— were due to the events of January 6, 2021. Def.'s Mem. at 15-16. This motion is denied as moot because the government does not intend to offer any evidence on this subject. Govt.'s Mem. at 19; *see also Baez*, 2024 WL 4880011, at *3 (denying identical motion as moot based on prosecution's statement that it was not offering evidence about the officers who died).

### F.   Exclusion of "Conjecture or Speculation"

Defendant next seeks to exclude any arguments about, references to, or evidence of any element of a crime based on the government's conjecture rather than admissible evidence. Def.'s Mem. at 16. Defendant's request is too vague to be considered. The Court will not admit inadmissible evidence and will exclude, as necessary, arguments about or references to such excluded evidence. If any particular exhibit or piece of testimony at trial is speculative, defendant may raise an objection at that time.

### G.   Exclusion of Evidence about "Guilty Crowds or Collective Guilt"

Defendant seemingly seeks to exclude various evidence and arguments about what others at the Capitol did on January 6, 2021. Def.'s Mem. at 16-20. While defendant breaks this down into multiple parts—namely, (1) exclusion of theory of guilt by association, (2) exclusion of

11

argument or evidence based on "guilty crowds or collective guilt," (3) exclusion of "crowd guilt," (4) exclusion of any video in which defendant does not appear, and (5) exclusion of "guilty watching," *id.*—this division adds no persuasive weight to his arguments. To the contrary, defendant does not refer specifically to any exhibits or arguments that he seeks to exclude, speaking in only vague generalities, *id.*, and this request(s) is thus just as generally denied.

With respect to arguments about guilt by association or collective guilt, the government does not seek a conviction on that basis, Gov't Opp'n at 21, but only on this defendant's offense conduct. With respect to evidence about what others did at the Capitol on January 6, 2021, defendant's motion to exclude the universe of such evidence, including generally "video[s] in which the defendant does not appear," Def.'s Mem. at 19, is denied. The context of what was occurring at the Capitol during the period when defendant was present is relevant to the *defendant's* conduct alleged in all of the charges, and may help the jury determine, as a factual matter, whether his conduct was incident to a civil disorder, whether the allegedly assaulted officers were engaging in official duties, whether defendant knowingly entered and committed violence in a restricted building, whether his conduct was disorderly or disruptive, and whether defendant was parading or demonstrating in the Capitol. *See* Indictment at 2-9 (Counts One through Nine). In assessing the disorderly or disruptive nature of defendant's conduct, "the jury [is] not required to view [defendant's] actions in isolation as though he were the only one at the Capitol that day. It [is] entitled to interpret [defendant's] actions in light of the circumstances." *Alford*, 89 F.4th at 953.[3] That is true even though others' actions cannot be the basis for

---

[3] Defendant recognizes this precedent in reply, but dismisses the case as "wayward" and suggests the holding is "unconstitutional," Def.'s Reply at 7-8, without any supporting coherent argument about unconstitutionality nor acknowledgement that this case is binding on this Court.

defendant's conviction. *See Baez*, 2024 WL 4880011, at *2 (explaining that although a defendant cannot be convicted based on "collective guilt," that "principle of criminal law does not impact the relevance of other individuals' actions to the government's case"). In addition, the actions of others may help establish the circumstances informing defendant's actions and thus his state of mind. *See id.* at *3 ("[A]lthough merely observing the conduct of others is insufficient by itself to establish criminal liability [here], the government may introduce evidence about [the defendant's] observation of others' actions to establish his mental state when [the defendant] took certain actions." (alterations in original) (quoting *Gunby*, 2023 WL 4993483, at *4)). Given the relevance and probative value of this evidence, defendant's concern about such evidence being unfair in some way, *see* Def.'s Mem. at 20, is rejected.

### H.    Exclusion of References to Free Speech

Finally, defendant argues that statements made while at the Capitol at a normal volume—or statements made days thereafter—cannot be criminally disruptive speech, Def.'s Mem. at 20-24, implying that such statements are merely expressions of his political beliefs. To the extent defendant is seeking to exclude any and all of his own statements that the government may seek to introduce, that request is denied, because such statements may be probative of the defendant's state of mind during his alleged offense conduct. "The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993); *see also United States v. Chansley*, 525 F. Supp. 3d 151, 163 (D.D.C. 2021) (denying defendant's motion for pretrial release, in part based on "defendant's actions and statements on and leading up to January 6th [which] indicate his willingness to halt those functions by means of violence"). "The government therefore may offer evidence for these purposes," as many judges have held in January 6, 2021-related cases. *Baez*, 2024 WL 4880011, at *3; *United States v. Fuller*, No. 23-cr-209 (CKK), 2024 WL

13

4880497, at *9 (D.D.C. Nov. 25, 2024) (holding that January 6 defendant cannot argue that any of his statements are inadmissible on First Amendment grounds).

Defendant does not appear to bring a broader First Amendment challenge to any of the statutes under which he is charged, nor does he concretely argue that the alleged criminal conduct is protected by the First Amendment. To the extent he does, those arguments are clearly foreclosed. As a general matter, violence is not protected by the First Amendment, *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972), nor does the First Amendment protect expression that is "an integral part of conduct in violation of a valid criminal statute," *United States v. Lee*, No. 23-cr-368 (TNM), 2024 WL 4836401, at *3 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)). The criminal statutes involved here are indeed valid and facially constitutional under the First Amendment. *See, e.g.*, *Nassif*, 97 F.4th at 980-81 (rejecting a First Amendment challenge to 40 U.S.C. § 5104(e)(2)(G)); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 22-24 (D.D.C. 2021) (rejecting a First Amendment challenge to 18 U.S.C. § 231(a)(3)); *United States v. Rhine*, 652 F. Supp. 3d 38, 59, 65 (D.D.C. 2023) (rejecting a First Amendment challenge to 18 U.S.C. § 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G)). Courts have also universally rejected as-applied First Amendment challenges to the conduct of those who expressed dissatisfaction by entering restricted grounds, engaging in violence, or engaging in disorderly conduct on January 6, 2021. *See, e.g.*, *United States v. Bingert*, 605 F. Supp. 3d 111, 130-31 (D.D.C. 2022) (rejecting January 6, 2021 defendant's as-applied challenge to 18 U.S.C. § 1752(a)(1)); *United States v. Bru*, No. 21-cr-352 (JEB), 2023 WL 4174293, at *3 (D.D.C. June 26, 2023) (holding that defendant cannot argue at trial that restrictions on defendant's right to protest inside the Capitol building are protected by the First Amendment); *United States v. Easterday*, No. 22-cr-404 (JEB), 2023 WL 6646384, at *3-4 (D.D.C. Oct. 12,

2023) (same); *Lee*, 2024 WL 4836401, at *2-5 (rejecting a January 6, 2021 defendant's as-applied challenges to 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 1752(a)(1) and (a)(2)). Defendant makes no effort to distinguish those cases by arguing that his alleged offense conduct at the U.S. Capitol was somehow different and deserving of protection, and this Court sees no basis to draw such distinction.

Put simply, defendant's alleged offense conduct enjoys no protection under the First Amendment to immunize him from criminal prosecution. Nor are any statements defendant made indicating his observations, motivations, reactions and intentions for his alleged offense conduct protected in a manner to render them inadmissible.

### III.  ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion in limine, ECF No. 66, is **DENIED.**

**SO ORDERED.**

Date:  January 15, 2025

_____
**BERYL A. HOWELL**
United States District Judge